RALPH C. LUPTON, trading as RALPH C. LUPTON & COMPANY, vs. DAVID W. HUGHES.

*Debt—Trial by Court without Jury—Landlord and Tenant—Rent —Wages; Preference of—Construction of Statute—Execution—Distress—Landlord's Lien for Rent.*

1. Section 52 of the General Corporation law approved March 10, 1899, (*Chap. 273, Vol. 21, page 461, Laws of Delaware*) applies to the preferred lien and wages of employees of such corporations only as have been first ascertained and adjudged to be insolvent by the Court of Chancery pursuant to the appropriate proceedings in that behalf, or, at least, are the subject of such proceedings pending in said Court; and not to the preferred lien and wages of employees of any corporation *not* so adjudged, or proceeded against as insolvent. The said section relates solely to corporations formed under said act, and to the payment of wages as a first preference to the employees of a corporation merely, and only after it has become insolvent; while section 1 of the act passed February 25, 1879, (*Chap. 147, Vol. 16, page 214, Laws of Delaware*) relates to employees of any person, association or corporation without any restriction as to insolvency. Hence it cannot be held that said section 1 of said act of 1879 is repealed or in any way affected by said section 52 of the act of 1899, or by any other statutory provisions, so far as concerns the preferred lien and payment of the wages of such employees.

2. A tenant may lawfully sell and deliver to a *bona fide* purchaser for a valuable consideration his goods and chattels on the demised premises, and they will pass to such purchaser having the *bona fide* possession of them on such premises, free from any lien or liability for rent due or growing due, unless they be lawfully attached or levied upon under execution process, prior to such sale and delivery, or duly levied upon prior or subsequent thereto under a distress warrant.

3. The employee's lien for wages will not continue upon, or any part of his wages be satisfied out of his employer's property, after it has been lawfully sold and delivered to a *bona fide* purchaser for value, but only whilst it continues to be the property of such employer, and when it is sold as his property.

(*June 4, 1900.*)

Judges GRUBB, PENNEWILL and BOYCE sitting.

*William S. Hilles* for plaintiff.

*Walter H. Hayes, Harry P. Joslyn* and *Horace G. Knowles* for defendant.

Superior Court, New Castle County, May Term, 1900.

ACTION OF DEBT (No. 146, Nov. Term, 1899), tried by the Court without a jury, by agreement of the parties.

By indenture of lease dated January 3, 1899, the plaintiff demised certain premises to Clement H. Congdon for the term of one year from March 25, 1899, with covenants against subletting, etc. Congdon took possession and placed therein certain personal property belonging to him consisting of a printing press and other goods and chattels. About May 12, 1899, Congdon sold and transferred said property together with the residue of the term under said lease to the Sun Publishing Company, a corporation then recently organized under the General Incorporation Act of that year, which thereupon took possession of said premises and personal property. Said transfer of the residue of the term was made without the knowledge or assent of Lupton the lessor and plaintiff. On August 26, 1899, the defendant as constable levied under a *fi. fa.* upon a judgment of John G. Simms *vs.* said company for $183.63 on the said personal property then in said company's possession on the demised premises. Three days thereafter he also levied thereon under a distress warrant of the plaintiff for rent in arrear due July 25, 1899, amounting to $94, and sold the said property under said *fi. fa.* and distress on September 6th following for $362.25. Deducting $30.05 therefrom for total costs, he holds $332.20 the residue for the respective creditors lawfully entitled thereto.

On or about said day of sale the defendant received notice from the employees of said company and also of Congdon, of their respective demands for wages, as a preferred lien on said property, aggregating about $1,200.

Other material facts fully appear in the opinion of the Court.

GRUBB, J.:—This suit is brought by said plaintiff as landlord of Clement H. Congdon, his tenant, to recover and apply to the payment of one year's rent amounting to $334, money realized by said defendant, Hughes, as constable, from a sale by him under said landlord's distress warrant and also under a *fi. fa.*

execution of John G. Simms, a judgment creditor of the personal
property of the Sun Publishing Company, incorporated under the
General Incorporation Act of March 10, 1899, which property was
taken under said distress and execution upon the premises demised
by the plaintiff, Lupton & Company, to said Congdon by inden-
ture of lease dated January 23, 1899, for a term of one year com-
mencing March 25, of the same year.

The proceeds, less costs, received by the defendant from said
sale amounted to the sum of $332.

On, or prior to September 6, 1899, the day of said sale, the
defendant received due notice from the plaintiff of his said claim
for one year's rent to March 25, 1900.  But on or about said day
of sale, payment of wages far exceeding the amount of said net pro-
ceeds, and of which the defendant as said constable received due
notice from the several employees claiming the same, was demanded
of him as preferred debts over both the said rent of the landlord
and the claim of said execution creditor, and hence he resists the
payment of the plaintiff's said rent, or any part thereof, claimed in
this suit.  The defendant, on behalf of the wages claimants, con-
tends that each of them is entitled under the provisions of section
1 of the act passed February 25, 1879, Chap. 147, Vol. 16, page
214, to have paid as a first preference out of the proceeds of said
sale by him as constable, under the distress against Congdon, and ·
under the *fi. fa.* against the Sun Publishing Company, his wages
due or growing due not exceeding one month's wages, nor fifty dol-
lars in any event.

On the contrary, the plaintiff claims that the wages preference,
if any exists, can, in this instance, be applied for only under sec-
tion 52 of the act approved March 10, 1899, Chap. 273, Vol. 21,
p. 461, because as he contends, so far as concerns the said company
and the wages preference of its employees, said section 1 of the act
of February 25, 1879, has been repealed by the provisions and
operation of section 38 of the act of March 14, 1883, Chap. 147,
Vol. 17, p. 212, and of said section 52 of said act of March 10,

1899, and section 1, act of March 25, 1891, Chap. 181, Vol. 19, p. 359, and other pertinent statutory provisions, as properly construed.

The provisions of said section 1 of the act of 1879, entitled, "An act to prefer wages of employees in case of execution and assignment;" are as follows:

"Section 1. That from and after the passage of this act, all debts or claims that may become due or growing due for labor or services rendered by any mechanic, laborer, clerk or other employee of any person or persons, chartered company or association employing laborers, clerks or mechanics in any manner whatsoever, shall be a first lien on all the real and personal property of such employer or employers, and shall be the first to be satisfied out of the proceeds of the sale of such property, whether made by an officer or an assignee of such employer or employers or otherwise: *Provided, however*, that the debt or claim secured to the mechanic, laborer, clerk or other employee under this act shall not exceed a sum equal to the wages of such mechanic, laborer, clerk, or other employee for one month: *And provided further*, that in no event shall such debt or claim exceed the sum of fifty dollars, though the wages for one month may be a greater sum. Notice of such claim or debt shall be given to the coroner, sheriff, constable, assignee, or other person who shall make or conduct the sale of property subject to the lien or preference provided for by this act."

Said section 52 of the act of March 10, 1899, entitled "An Act providing a General Corporation Law," provides as follows:

"Section 52. Whenever any corporation, formed under the provisions of this act, shall become insolvent, the employees doing labor or service of whatever character in the regular employ of such corporation, shall have a lien upon the assets thereof for the amount of the wages due to them, not exceeding two months' wages respectively, which shall be paid prior to any other debt or debts of said corporation; but the word 'employee' shall not be construed to include any of the officers of such corporation."

It will be observed that said section 52 relates solely to corporations formed under said act of 1899, as said Sun Publishing Company was, and to the payment of wages as a first preference to the employees of a corporation merely, and only after it has become insolvent; while section 1 of said act of 1879 relates to employees of any person, association, or corporation without any restriction as to insolvency.

Considered in connection with the other pertinent statutory provisions above referred to, said section 52 plainly appears to apply to the preferred lien and wages of employees of such corporations only as have been first ascertained and adjudged to be insolvent by the Court of Chancery pursuant to the appropriate proceedings in that behalf authorized by law, or, at least, are the subject of such proceedings pending in said Court, and not to the preferred lien and wages of employees of any corporation not so adjudged, or proceeded against as insolvent, and the payment thereof out of the proceeds of the sale of its property by a public officer. As it has not been shown in the case now before this Court that said Sun Publishing Company has been so ascertained and adjudged to be insolvent, or the subject of pending proceedings for such purpose, it can not justly be maintained that said section 52 of the act of 1899 applies to its employees now seeking the preferred payment of their wages as such.

Hence it cannot be held that said section 1 of said act of 1879 is repealed, or in any way affected, by said section 52 of the act of 1899, or by any other statutory provisions, so far as concerns the said company's employees and the preferred lien and payment of their wages.

Accordingly said employees are entitled to have payment of their wages pursuant to said section 1 of the act of 1879, out of the proceeds of the sale by the defendant of the property of said Company, in preference to both the execution creditor, Simms, and the distraining landlord, Lupton & Company, the plaintiff in this suit.

This conclusion makes it unnecessary to consider or decide any of the constitutional questions so earnestly and elaborately discussed by the respective counsel at the hearing of this cause.

There are other contentions, however, which remain to be considered.

It appears by the evidence that the property, the distribution of the proceeds of which under the constable's sale is in question here, was sold and delivered by Congdon, the plaintiff's tenant, to the said Sun Publishing Company, *bona fide* and for a valuable consideration, prior to any levy thereon, either under the plaintiff's distress or said Simms' execution. These facts are neither denied nor questioned. And yet the plaintiff claims that, inasmuch as it continued to remain in the company's possession on the premises demised by him to Congdon, it passed to said company under Congdon's said sale and delivery, subject to the plaintiff's right not only to distrain upon said property so continuing on the premises, for rent due, but to have also his rent in arrear or growing due as a preference out of the proceeds of the sale thereof by said Simms' execution process, under *Section 60, Chapter 20, Revised Code, 874;* and therefore, that the said claims for wages of the respective employees of the said company, having been contracted after the demise, and whilst its said purchased property was on the leased premised, must be subordinated to his paramount right as landlord to said preference through said execution, under his contract of tenancy with Congdon.

This contention is untenable, for the tenant may lawfully sell and deliver to a *bona fide* purchaser for a valuable consideration his goods and chattels on the demised premises, and they will pass to such purchaser having the *bona fide* possession of them on such premises, free from any lien or liability for rent due or growing due, unless they be lawfully attached therefor prior to such sale and delivery, or duly levied upon under execution process delivered prior thereto, or unless they be duly levied upon prior or subsequent thereto under a distress warrant.

*Taylor vs. Horsey, 5 Harr., 132; Lambson vs. Matthew, 5 Harr., 30; Hageny vs. Herbert, 3 Houst., 632-3.*

Consequently as said property was levied on after Congdon's transfer thereof, under a *fi. fa.* delivered to the defendant subsequent thereto, and sold as the goods and chattels of the company, and not as the property of the plaintiff's tenant Congdon, he could take no rent either in arrear or growing due, as a preference through the said execution sale, under the provisions in that behalf of section 60 of said chapter 120, which give the landlord said preference only when the goods and chattels sold under the execution, belong to the tenant, and not to some other owner.

Nor can the plaintiff in this instance receive any of the rent out of the proceeds of the property sold under his distress warrant. For the evidence shows that the preferred claims for wages to which the respective employees of said company are entitled, amount in the aggregate, to a sum far exceeding the net proceeds of the sales under both the said distress and execution, and therefore leave nothing applicable to the plaintiff's claim, or any part thereof, in this suit.

Certain of the wages creditors claim as employees of Congdon before he conveyed the property in question to said company, as well as employees of the company after said conveyance. As such employees of Congdon they claim that their lien for wages attached, under said section 1 of the act of 1879, prior to his conveyance to the company, and consequently that said property passed to it subject to such lien; and therefore that they are entitled, as employees of Congdon, to be preferred out of the proceeds of the constable's sale thereof as the property of the company. But we think it is not the design or meaning of said act that the employee's lien for wages shall continue upon, or any part of his wages shall be satisfied out of his employer's property after it has been lawfully sold and delivered to a *bona fide* purchaser for value, but only whilst it continues to be the property of such employer, and when it is sold as his, and not as his vendee's, by an officer,

etc., and with due notice of such claim for wages to such officer, etc., as prescribed in said act. Hence the wages of any of Congdon's employees can not be paid out of the proceeds of the property sold by the constable in this instance, not as Congdon's but as the goods and chattels of the Sun Publishing Company. As the plaintiff in this suit is not considered by the Court to be entitled to any of the said proceeds of sale in the hands of the defendant, judgment is rendered in favor of the defendant for his costs, etc.

*Judgment for defendant for costs.*